(No. 19346.—■
GERTRUDE HINKLE *et al.* Defendants in Error, *vs.* WILLIAM SALLEE *et al.* Plaintiffs in Error.

*Opinion filed June 19, 1929.*

HAROLD F. TRAPP, for plaintiff in error William Sallee.

PETER MURPHY, for defendants in error.

Mr. COMMISSIONER PARTLOW reported this opinion:

On May 9, 1924, defendants in error, Gertrude Hinkle and Clarence Hinkle, filed their bill in the circuit court of Logan county against plaintiffs in error, William Sallee, Grover Wright and John S. Haller, to cancel a deed, a note, the assignment of a chattel mortgage, and to compel the surrender of the possession of certain real estate. There was a hearing before the chancellor, a decree was entered

as prayed, and the case comes to this court upon a writ of error.

The evidence shows that prior to January 1, 1922, defendants in error were the owners, subject to a mortgage of $300, of a house and lot in Lincoln, Illinois, which they occupied as their home. They placed the property in the hands of John C. Healy, a real estate agent, for sale. Plaintiff in error William Sallee had been a farmer but at that time he lived at Latham, in Logan county. He had a married daughter who lived in Lincoln, and he wanted to secure as a home for the daughter and her husband a house which was owned by the husband's father and was occupied by plaintiff in error Grover Wright, who was willing to move if he could find another house in which to live. Roscoe and Orval Smith were farmers living in the neighborhood, and they had a contract for graveling a certain public road. On August 8, 1921, Sallee sold to Roscoe Smith his farm equipment, consisting of horses, stock and farm machinery, for $1800, of which $300 was paid in cash. A chattel mortgage was executed by Smith to Sallee mortgaging the chattels purchased, together with other chattels owned by Smith, which mortgage was given to secure a note of $1500 due August 8, 1922, signed by Roscoe Smith and Orval Smith. The chattel mortgage covered eight horses, one cow, some farm implements, two wagons, one buggy and two sets of harness. The mortgage was filed for record on August 19, 1921, and $50 was paid on it on September 21, 1921. On October 13, 1921, Sallee borrowed $450 of the American National Bank of Lincoln, due April 11, 1922, and he put up the Smith note and chattel mortgage as collateral security for the loan. F. W. Longan was the cashier of this bank. The $1500 note and chattel mortgage were not indorsed by Sallee to the bank but were merely delivered to the bank.

Sallee began negotiations through Healy to buy the property of defendants in error. On January 26, 1922, a

verbal contract was entered into, by the terms of which defendants in error were to trade their real estate to Sallee for the Smith note and chattel mortgage. The purchase price of the real estate was $1550 clear of encumbrance, and the chattel mortgage, with interest, amounted to about that sum. Sallee told Hinkle that the note and chattel mortgage were good; that they were better than the cash, because they drew seven per cent interest; that Sallee was the assessor of his township and knew the value of property, and that the property covered by the chattel mortgage was worth more than the mortgage. Hinkle testified that Sallee said that Smith had lands up north; that he had an interest in land near Latham, in Logan county; that he had all kinds of road implements, had twenty-eight mules, and that he was good for the amount of the mortgage.

On January 26, 1922, defendants in error executed a deed for the property to Sallee and placed the deed in the hands of plaintiff in error John S. Haller, to hold until he was ordered to deliver it to Sallee. Sallee executed to defendants in error a note for $1200, due April 8, 1922. Hinkle executed a note to Sallee for $300, due April 8, 1922, to cover the amount of the mortgage on the real estate, which was to be conveyed free of encumbrance. These notes were delivered to the bank and were to be held by the bank until Sallee paid the $450 note due to the bank and the bank delivered to Sallee the possession of the $1500 Smith note and chattel mortgage. Defendants in error moved out of the house in question as soon as the contract was made, and Grover Wright moved in, where he remained until March 1, 1925. He paid a part of the rent to Sallee and a part he did not pay. Sallee paid the taxes on the real estate for 1922 and 1923 and the premises were sold for the taxes for 1924.

The $1500 note and chattel mortgage remained in the possession of the bank until June 28, 1922, when Sallee paid his $450 note to the bank. The $1200 note executed by

Sallee to Hinkle ·was then canceled. The $300 note executed by Hinkle to Sallee remained in the bank. The Smith note and chattel mortgage were assigned to Hinkle by Sallee without recourse and the assignment was immediately filed for record. Hinkle testified that after the transaction was closed at the bank, and as soon as Sallee left the bank, Longan, the cashier, told Hinkle that the note and chattel mortgage were no account—that there was at least a question about them—and as a result of this conversation Hinkle began to investigate the chattel mortgage. He found that on April 22, 1922, a judgment by confession was entered against Roscoe Smith for $154. On the same date two judgments by confession were entered against Roscoe and Orval Smith, one for $373.25 and the other for $381. On June 17, 1922, a judgment by confession was entered against them for $387.23. All of these judgments were unpaid. On June 15, 1922, Roscoe Smith executed a bill of sale of certain personal property not in question in this case, and on the same day he executed another bill of sale for fifty-five acres of growing wheat, three mules, three sets of double harness, one set of single harness, one buggy, one wagon and certain farm implements. Clarence Coddington testified that in the fall of 1921 Roscoe Smith lived on a farm belonging to Coddington's father. The witness made frequent trips to the farm in the spring and summer of 1922. He testified that some of the property described in this chattel mortgage was on the farm and some of it was not on the farm. He testified that Smith gradually traded off the personal property covered by this chattel mortgage; that his financial condition was bad; that he was insolvent and had to leave the farm before the season was over. No evidence was offered by Sallee to show that the mortgaged property was owned by Smith on June 28, 1922.

It is claimed by defendants in error that between January 26, 1922, and June 28, 1922, Roscoe Smith disposed of practically all of the property covered by the chattel

mortgage, and that on June 28, 1922, these four judgments against him were unsatisfied. Defendants in error claim that they did not know of this condition of the mortgaged chattels until about July 1, 1922; that immediately upon discovering the condition they notified Haller not to deliver the deed to Sallee; that they executed a written assignment of the chattel mortgage to Sallee and tendered the assignment, the $1500 note and the chattel mortgage to him and he refused to accept them. The deed from defendants in error to Sallee for the premises was never delivered to Sallee but remained in the hands of Haller. Grover Wright defaulted in the payment of his rents, and while this cause was pending in the circuit court Sallee brought suit against Wright and recovered a judgment for possession of the premises. On the day Wright moved out defendants in error moved in and took possession and have had possession since that time.

The decree found the facts substantially as above stated. It found that between January 26, 1922, and June 28, 1922, a considerable portion of the mortgaged property was sold; that the note and chattel mortgage were practically worthless when delivered to Hinkle; that the Smiths were insolvent at that time; that the title to the real estate never vested in Sallee but that defendants in error continued to be the owners thereof, and that the deed never was delivered to Sallee. The decree canceled the deed from defendants in error to Sallee, the $300 note from Hinkle to Sallee, and the assignment of the $1500 note and chattel mortgage from Sallee to Hinkle.

It is insisted by Sallee that the decree should be reversed because there is a variance between its allegations and the proof; that the bill alleged actual fraud; that it averred that Sallee sold to Hinkle the Smith note secured by a chattel mortgage which was void as to creditors because it was not filed for record within ten days of the date of its execution; that Sallee falsely represented that the chattels cov-

ered by the mortgage were in the possession of the mortgagor on January 26, 1922; that he represented that there were no judgments against Roscoe Smith and no liens on the chattels other than the mortgage; that the evidence does not sustain these allegations, but, on the contrary, shows that the loss of the chattels was caused by a mistake as to the law; that Hinkle was advised that the chattel mortgage was invalid because it had not been filed for record within ten days of its execution, and, acting upon this advice, he failed and refused to take any steps to protect or collect the note secured by the mortgage or to seize and secure the chattels described in the mortgage, which property was sufficient in value to pay the note.

The bill alleged that the mortgage was invalid as to creditors because it was not recorded within ten days of its execution. In *Nelson* v. *Hoffman,* 314 Ill. 616, it was held that this provision of the statute was unconstitutional because it was not passed as provided in the constitution, therefore this alleged defect in the chattel mortgage was not material. If judgments were rendered after the lien of the mortgage attached, such judgments were not prior to the mortgage. But regardless of these allegations of the bill, which were not established by the evidence, the other allegations of the bill, and the evidence in support thereof, were sufficient to sustain the decree as rendered.

The bill alleged all of the facts with reference to the dealings between the parties. It alleged that Sallee falsely represented that the chattels described in the mortgage were in the possession of the mortgagor; that Hinkle had seen neither the note nor the mortgage prior to their delivery to him, nor had he any knowledge of any defects therein or thereto, nor of the existence of any indebtedness of Smith other than the indebtedness evidenced by the note and mortgage; that when the chattel mortgage came into the possession of Hinkle he discovered that the chattels described in the mortgage had been disposed of by Roscoe

Smith and could not be found and were not then in Logan county; and that upon the discovery of these conditions Hinkle tendered the note and mortgage back to Sallee and he refused to accept them.

It is apparent from the evidence that on January 26, 1922, when the contract was entered into between Hinkle and Sallee, Sallee was in no position to legally assign the Smith note and chattel mortgage to Hinkle or to convey or give to Hinkle any interest in or right to said note or mortgage. They were both in the possession of the bank as security for Sallee's note for $450, which was a prior claim, although neither the note nor the chattel mortgage had been assigned to the bank or to Hinkle. This fact was recognized by the parties and other arrangements were made as above set forth, and the postponement of the final execution of the contract was delayed until such time as Sallee paid his indebtedness to the bank and secured the possession of the notes and chattel mortgage. The contract was therefore executory.

In the absence of a special contract a pledgee cannot sell commercial paper or choses in action held by him as collateral security, but he may collect the same and apply enough of the proceeds to pay his debt, returning any balance to the pledgor. (*Peacock* v. *Phillips*, 247 Ill. 467.) The right to protect this note and chattel mortgage and the property covered thereby between January 26, 1922, and June 28, 1922, was either in the bank or Sallee or both. It was not only their right to protect this property, but it was the duty of Sallee to see to it that the property was preserved so as to be turned over to Hinkle when the time came to close the trade. Hinkle had no such title or right of possession in the property prior to its assignment to him which authorized him to take possession of it and protect it, nor was he under any obligation to do so. Under his contract with Sallee the trade was not to be completed or the title to pass until the note and chattel mortgage were

re-delivered to Sallee and assigned to Hinkle. If Sallee, before the time for closing the contract, permitted the property to become dissipated so that the note and mortgage were worthless he could not require Hinkle to convey. The decree found that on June 28, 1922, the chattels had been sold or traded and that the note and mortgage were worthless. The evidence sustains this finding. The true state of affairs was not known to Hinkle when the note and mortgage were assigned to him. He testified that immediately after the transfer he was told by Longan, the cashier of the bank, that these instruments were worthless. Upon investigation he found this to be true, he ordered Haller not to deliver the deed to Sallee, and he tendered the note and mortgage back to Sallee.

The evidence shows that when this trade was originally made Sallee represented to Hinkle that Roscoe Smith was good financially and there was no question about the validity and value of the note and chattel mortgage. He admits in his answer that he made these representations. It is very doubtful from the evidence whether these representations were true. The evidence of Coddington is that in the fall of 1921 Smith was in financial difficulty. In the spring of 1922 he was insolvent. Four judgments were rendered against him which he could not pay, and he made two bills of sale of his personal property. Sallee offered no evidence to show where this property was at the time the contract with Hinkle was made, what was done with it after the contract was made, or as to the financial condition of Smith at that time. While it may be true that Sallee did not falsely and fraudulently misrepresent the facts as to the financial condition of Smith at the time the trade was made, yet the evidence shows that the representations which he made were not true, whether he was aware of that fact or not. When the time came to close this contract, on June 28, 1922, if Hinkle had refused to convey Sallee could not have enforced specific performance, because the

note and chattel mortgage were practically worthless. The decree does not make a specific finding as to fraud, but it does find that the chattel mortgage was practically worthless, that the property had been conveyed and that Hinkle was entitled to the relief as prayed. The evidence sustains this finding, and the decree will be affirmed.

Per CURIAM: The foregoing opinion reported by Mr. Commissioner Partlow is hereby adopted as the opinion of the court, and judgment is entered in accordance therewith.

*Decree affirmed.*